The People on relation of Belknap agt. Beach.

## SUPREME COURT.

THE PEOPLE on the relation of ROBERT LENOX BELKNAP agt. ALLEN C. BEACH, secretary of state of the state of New York.

*Mining associations — construction of act to authorize the formation of corporations for manufacturing, mining, &c., &c.*

The plaintiffs seek by *mandamus* to compel the filing in the office of the secretary of state articles of association incorporating the "Kesler Mining Company." They state, in the paper sought to be filed, that the corporation is for "the mining of gold, silver and lead in the territory of Utah;" they also further say, in the articles of association, that the said company is formed for the purpose of carrying on some part of the business outside the state, namely in Big Cottonwood district, Utah, and the name of the place in which the principal part of the business of the said company is to be transacted is in the city and county of New York." It is objected, *first,* that the company is to be organized to mine three metals and that it is unlawful under the act to form a corporation to mine for more than one. *Second,* that the place of business is not stated with sufficient explicitness:

*Held,* that the proposed incorporation does not seek to embark in three kinds of mining, but that it is one kind of mining though its results may be the production of three metals after the ingredients of the ore mined are separated.

*Held,* further, that it is not the policy of the law to limit and confine the business of a corporation in its commencement to the mining of one kind of metal (*Compare secs.* 1 *and* 20).

The words "any kind of mining business," as used in section 1, are not used as words of limitation, but to signify that the formation of companies is allowed for every kind of mining business.

*Held,* also, that the place of business of the company is stated in the articles of association with sufficient explicitness and in this respect complies with the statute (*Laws of* 1857, *chapter* 29, *sec.* 3).

*Albany, Special Term, June,* 1879.

APPLICATION for a peremptory *mandamus* to compel the filing, in the office of the secretary of state, of articles of association incorporating the "Kesler Mining Company."

*Mr. Deforest*, for the motion.

*A. Schoonmaker, Jr.*, attorney-general, opposed.

WESTBROOK *J.* — This is a friendly proceeding to obtain a judicial construction of the act entitled " An act to authorize the formation of corporations for manufacturing, mining, mechanical, chemical, agricultural, horticultural, medical or curative, mercantile or commercial purposes."

The relator and five other gentlemen seek to form a corporation, as they state in the paper sought to be filed, for "the mining of gold, silver and lead, in the territory of Utah."

They also further say, in the articles of association, that " the said company is formed for the purposes of carrying on some part of the business outside the state, namely, in Big Cottonwood district, Utah, and the name of the place in which the principal part of the business of the said company is to be transacted is in the city and county of New York."

Upon those portions of the articles of association which have been just given, the objection made by the respondent to the filing thereof are founded, and they will now be considered :

First. It is objected that the company is to be organized to mine three metals, " gold, silver and lead," and that it is unlawful, under the act to which reference has been made, to form a corporation to mine for more than one.

The objection is based upon the first section of the act aforesaid, which authorizes the formation of a company " for the purpose of carrying on any kind of     *     *     *     mining     *     *     * business." The argument is that the word " kind " is in the singular number, and that, as the mining of these metals involves three kinds of mining, it is, therefore, unlawful to form a company for such triple purpose. Assuming the fact to be, as claimed by the secretary, that the corporation is sought to be formed for three kinds of mining, the construction would seem to be narrow.

This follows, not only from the plain objects of the statute, but from express words. By the twentieth section it is provided : " Any corporation or company hereafter formed, either by special act or under the general law, and now existing for any    *    *    *    mining    *    *    *    purposes *    *    *    may also extend its business to any other *    *    *    mining    *    *    *    business." If it was the policy of the statute (as has been argued, the first section, by using the words " Any kind of    *    *    * mining    *    *    *    business," shows), to limit the formation of a company to one branch or kind of mining, it was certainly a direct and flat contradiction thereof to expressly declare in a subsequent section, that when organized it might " extend its business to any other    *    *    *    mining *    *    *    business." .

If it was the policy of the law to limit and confine the business in its commencement, it would seem that such purpose would have been maintained during its life. The argument is that, to-day, when the articles of association are filed, the business must be limited to the mining of one kind of metal ; to-morrow, however, when you are a company formed, you may extend or increase your mining business *ad libitum*. Would it not be a sounder construction of the two sections to say that the words " any kind of mining business " are not used as words of limitation, but to signify that the formation of companies is allowed for every kind of mining business ? If not so intended, then the same act has provided, in a subsequent section (the twentieth), the most convenient and speedy mode to thwart its object, if that object is what the secretary claims it to be. The argument of the secretary, however, is based upon a misapprehension of facts. The proposed incorporation does not seek to embark in three kinds of mining. It is one kind of mining, though its results may be the production of three metals after the ingredients of the ore mined shall be separated. The affidavit of Mr. Belknap, after describing the property of the

company in Utah, states: "There are now two tunnels within the property, from which ore, containing gold, silver and lead are extracted. These metals are so commingled in the ore that it is impossible to mine one without mining the other." This fact, it is true, was not brought to the attention of the secretary, but when proved, as it now is, it seems clearly to follow that the mining is single in its process. If the articles of association had stated the process more fully, and had declared that the company was formed to mine ore, from which it proposed to extract and separate the gold, silver and lead, it would scarcely be argued that the objection made was well taken. Precisely that appears by the evidence now offered, and hence, as the object of the association is really limited to one kind of mining, the objection of the secretary must be overruled, as well for that reason as for the one which gives to the statute a broader meaning than that given by the secretary to its provisions.

Second. It is further objected that the place of business of the company is not stated with sufficient explicitness.

The second section of the articles sought to be filed, it will be remembered, declares that the mining is to be carried on "in the territory of Utah." When, therefore, its sixth states that "the name of the place in which the principal part of the business of the said company is to be transacted is the city and county of New York," it is evident that the mining is not to be there conducted. And when such sixth section further declares that "some part of its business" is to be carried on "outside of the state of New York, namely, in Big Cottonwood district, Utah," we further understand that the theater of mining is thereby more particularly designated than it was in the second.

Section 3 of chapter 29 of the Laws of 1857, declares: "If any company shall be formed under said act for the purpose of carrying on any part of its business in any place out of this state, the said certificate shall so state, and shall also state the name of the town and county in which the principal part

of the business of said company, within this state, is to be transacted; and said town and county shall be deemed the town, place and county in which the operations and business of the company are to be carried on, and its principal place of business within the meaning of the provisions of this act."

We fail to see wherein the certificate omits to comply with this statute. It does declare that a "part of its business" is to be carried on in a "place out of this state;" and though the section of the act we have quoted does not expressly, at least, require such place to be stated, the certificate does point it out as "Big Cottonwood district, Utah," and it is not shown that the place can be more definitely named. The certificate also specifies "the name of the town and county in which the principal part of the business of said company, within this state, is to be transacted," and that is "the city and county of New York." It would, perhaps, have been better if the phraseology of the articles had followed the statute more closely. The act does not require the principal part of the business to be done in this state, but it declares that "the name of the town and county in which the principal part of the business of said company, within this state, is to be transacted" shall be stated, and then it declares that "said town and county shall be deemed the town, place and county in which the operation and business of the company are to be carried on, and its principal place of business," &c. This, however, is substantially stated, and all the other provisions of the section, as it seems to me, are also substantially complied with.

In the answer which the secretary has made to the application he has also called the attention of the court to the frauds which are being perpetrated upon the public by mining corporations formed under the general act, and hence, he argues, the need of construing the act so as to limit the operations of the company to one kind of mining. It may be answered that an association avowedly formed to mine for three metals affords no greater opportunity for imposition upon the public

than one formed to mine for one; that a limitation, in its formation, to be effectual for the purpose suggested, must exist during the entire life of the corporation, which, confessedly, is impossible so long as section 20 of the act is unrepealed; and, lastly, that a possible abuse of its franchise cannot prevent an incorporation from being formed which complies with the law.

It is conceded, however, that the corporation now sought to be created is free from all imputation of fraud. As there is no legal objection, as it seems to me, to be taken to the articles of association, the application for a *mandamus* is granted.